IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MEI SERVICES, INC.,                      :
                                         :
                  Plaintiff,             :        CIVIL ACTION NO.
                                         :
vs.                                      :        1:20-CV-2424-CC
                                         :
CARDINAL HEALTH 110, LLC                 :
                                         :
                  Defendant.             :

## OPINION AND ORDER

This matter is before the Court on Defendant Cardinal Health 110, LLC's Motion to Dismiss MEI Services, Inc.'s First Amended Complaint (the "Motion to Dismiss") [Doc. No. 13] and Defendant Cardinal Health 110, LLC's Motion for Rule 11 Sanctions (the "Motion for Sanctions") [Doc. No. 17].  For the reasons stated below, the Court **GRANTS** the Motion to Dismiss and **DENIES** the Motion for Sanctions.

## I.    BACKGROUND

### A.    Facts

Plaintiff MEI Services, Inc. ("Plaintiff" or "MEI") is a pharmacy company that provides a broad array of services including pharmacy consulting, wholesale distribution, and pharmacy benefit management.  (Pl. MEI Services, Inc.'s First Am. Compl. ("First Am. Compl.) ¶ 3.)  Defendant Cardinal Health 110, LLC

("Defendant" or "Cardinal Health") is a multi-national health services company. (Id. ¶ 4.)  As a pharmacy company, MEI has engaged in considerable business with Defendant Cardinal Health, including the purchase of significant amounts of prescription drugs.  (Id. ¶ 5 & First Am. Compl., Ex. 7 ¶¶ R1-R2.)

On or about December 27, 2016,[1] MEI sold the assets of one of its stores to CVS Pharmacy ("CVS") pursuant to an Asset Purchase and Sale Agreement the "APA").  (First Am. Compl. ¶ 6 & First Am. Compl., Ex. 1.)  Pursuant to the APA, $340,000 of the sale proceeds were to be kept by CVS as a holdback (the "Holdback") to ensure that MEI complied with certain indemnification provisions in the APA.  (First Am. Compl. ¶ 7.)  To the extent the indemnification provision was not triggered, the APA originally called for CVS to return fifty percent (50%) of the Holdback to MEI after eighteen (18) months and the remaining fifty percent (50%) after thirty-six (36) months.  (Id. ¶ 8.)

Prior to the closing, MEI had negotiations with both Cardinal Health and Live Oak Bank Company ("Live Oak").  (Id. ¶ 9.)  Both Cardinal Health and Live Oak were secured creditors of MEI and, as such, both would have to release liens in connection with the closing.  (Id.)  Accordingly, it was agreed that MEI would

---

[1] The First Amended Complaint alleges that APA occurred on our about December 27, 2017, but based on the exhibits attached to the First Amended Complaint in support of that allegation, it appears that the date in paragraph 6 of the First Amended Complaint is a typographical error.

assign the Holdback funds to Cardinal Health and Live Oak.  (Id. ¶ 10.)  On February 7, 2017, Cardinal Health sent correspondence to CVS confirming this agreement.  (Id. ¶ 11 & First Am. Compl., Ex. 1.)

Pursuant to correspondence dated August 6, 2018, which slightly modified what was set forth in the prior correspondence, the Holdback funds were to be split equally ($170,000.00 each, made in two installments) between Live Oak and Cardinal Health.  (First Am. Compl. ¶ 12 & First Am. Compl., Ex. 2.)  MEI and Cardinal Health specifically agreed on the usage and treatment of the Holdback funds. (First Am. Compl. ¶ 13.)  Under the agreement, Cardinal Health agreed to use any Holdback funds received from CVS exclusively to pay any outstanding notes or trade accounts between MEI and Cardinal Health.  (Id. ¶ 14.)  It was also agreed that to the extent MEI was not indebted to Cardinal Health on any notes or trade accounts, Cardinal Health would return the Holdback funds to MEI.  (Id. ¶ 15.)

In accordance with the above, on August 9, 2019, CVS sent the first installment of the Holdback to Cardinal Health in the amount of $85,000.00.  (Id. ¶ 16.)  After discussing the matter, MEI requested that Cardinal Health apply the $85,000.00 as a credit to a trade account operated by an MEI affiliate.  (Id. ¶ 17.)  Cardinal Health agreed and the credit was applied without incident.  (Id. ¶ 18.)

In a separate transaction, in or about May 2018, MEI-affiliate Buckhead Pharmaceutical Association ("Buckhead"), which signed its initial Cardinal Health agreement contemporaneous with MEI's initial agreement contemporaneous with MEI's initial agreement, sold its assets.  (First Am. Compl., Ex. 7 ¶¶ R3 & R8.) Following that sale, MEI-affiliate Buckhead incurred a debt on its account with Cardinal Health in the amount of $69,511.65.  (Id. ¶ R8.)  Mr. Bogachek, Buckhead, and MEI all refused to pay the debt.  (Id.)

In February of 2020, MEI requested that CVS release the second—and final-$85,000.00 payment.  (First Am. Compl. ¶ 19.)  Pursuant to the above request, CVS paid the remaining $85,000.00 to Cardinal Health.  (Id. ¶ 20.)  At the time of the payment, MEI and Cardinal Health were engaged in considerable business and MEI was indebted to Cardinal Health on a certain trade account in an amount in excess of $85,000.00.  (Id. ¶ 21.)  Accordingly, it was understood by both parties that Cardinal Health would simply apply the $85,000.00 as a credit to MEI's account.  (Id. ¶ 22.)  This was consistent both with the initial agreement and also with the course of dealing established with the payment of the initial Holdback funds.  (Id. ¶ 23.)

In fact, the above was confirmed in writing by Cardinal Health.  (Id. ¶ 24.) Specifically, on February 24, 2020, Cardinal Health confirmed the above credit in an internal email that was specifically forwarded to MEI.  (Id. & First Am. Compl.,

Ex. 3.)  Not only did Cardinal Health confirm the credit in writing, Cardinal Health also apparently applied the credit at one point. (First Am. Compl. ¶ 25.)  Although Cardinal Health applied the credit, they inadvertently applied it to an MEI account that was inactive (thus providing no benefit).  (Id. ¶ 26.)  As a result, MEI requested that it be applied to the correct account.  (Id.)  Cardinal Health complied with the request for a brief time.  (Id.)

Around this time, MEI's principal, Michael Bogachek, began to have a number of other business disputes with Cardinal Health unrelated to the Holdback.  (Id. ¶ 27.)  In March of 2020, MEI learned that Cardinal Health had reversed course, retracted the credit, and was now refusing to pay the $85,000 to MEI or apply it as a credit to MEI at all.  (Id. ¶ 28.)  Cardinal Health instead issued instructions applying the Holdback amount to the trade account of MEI-affiliate Buckhead.  (First Am. Compl., Ex. 6.)

On March 23, 2020, counsel for MEI demanded the return of the $85,000.00.  (First Am. Compl. ¶ 30 & First Am. Compl., Ex. 5.)   MEI disputed Cardinal Health's right to apply the Holdback to the Buckhead account.  (First Am. Compl., Ex. 5 and Ex. 7 ¶ R7.)  MEI and Mr. Bogachek threatened class litigation on behalf of MEI and its affiliates, having nothing to do with the Holdback.  (First Am. Compl., Ex. 5 & Ex. 7 ¶ R6.)

MEI and Cardinal Health began to have certain settlement negotiations through counsel. (First Am. Compl. ¶ 31.) On April 16, 2020, the parties reached a settlement agreement. (Id. ¶ 32.) The complete agreement between the parties is reflected in an email chain. (Id. ¶ 33 & First Am. Compl., Ex. 6.) As part of the agreement, Cardinal Health would credit the $85,000.00 to MEI's debt and MEI would provide "Cardinal Health with a full release of all claims, including the usury class action claims previously alleged by Mr. Bogachek." (First Am. Compl. Ex. 6, p. 2.) Additionally, Cardinal Health agreed to provide a draft of the settlement agreement on April 20, 2020, and Cardinal Health did so. (First Am. Compl. ¶ 35 & First Am. Compl., Ex. 7.)

Prior to the email chain, the respective counsels for MEI and Cardinal Health had verbal discussions. (First Am. Compl. ¶ 34.) At no point in the verbal discussions, or any of the written communications, did Cardinal Health request that MEI include any entity other than MEI in any settlement agreement. (Id.) Much to MEI's dismay, on April 20, 2020, counsel for Cardinal Health circulated a proposed settlement draft that included a number of parties whose inclusion was never discussed (or agreed upon)—either in telephone conversations or in the email discussions. (Id. ¶ 35.)

As a result, MEI insisted that Cardinal Health honor the settlement that was reached. (Id. ¶ 36.) Despite best efforts by MEI, Cardinal Health refused to honor

the settlement.  (<u>Id.</u> ¶ 37.)  Moreover, Cardinal Health continues to hold the $85,000.00.  (<u>Id.</u> ¶ 38.)  MEI consequently commenced the instant lawsuit.  (<u>Id.</u> ¶ 39.)

      B.    <u>Procedural History</u>

On May 7, 2020, MEI commenced this action in the State Court of Gwinnett County alleging claims for conversion, breach of contract (related to the application of credit), breach of contract (related to the settlement agreement), punitive damages, and attorney's fees.  On June 5, 2020, Cardinal Health removed the case to this Court.  On June 12, 2020, Cardinal Health moved the Court to dismiss the Complaint.  MEI exercised its right to amend its pleading and filed the First Amended Complaint, which is now the operative pleading in the action.  Like the original Complaint, the First Amended Complaint includes claims for conversion, breach of contract (related to the application of credit), breach of contract (related to the settlement agreement), punitive damages, and attorneys' fees pursuant to O.C.G.A. § 13-6-11  Cardinal Health presently moves the Court to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    MOTION TO DISMISS

### A.    Standard of Review

The Court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation and punctuation omitted).  The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570).  This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citation omitted).  Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678 (citation omitted).

Instruments attached to a pleading are part of the pleading, and the Court may consider them for Rule 12(b)(6) purposes.  Fed. R. Civ. P. 10(c).  Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits

control. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.")

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citation omitted).  Likewise, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue that precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Brown v. Crawford Cty., 960 F.2d 1002, 1010 (11th Cir. 1992).

B.    Analysis

Cardinal Health contends that the Court should dismiss MEI's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for three reasons.  First, Cardinal Health maintains that it cannot be liable for conversion since it holds title to the funds that are the subject of the claim and because there

is a commercial contract that allows Cardinal Health to apply the funds to the defaulted account of an MEI affiliate that governs the parties' debtor-creditor relationship and the funds at issue.  Second, Cardinal Health argues that its internal directives did not establish a contract between Cardinal Health and MEI. Finally, Cardinal Health contends that the parties never consummated the settlement agreement and that, even if they did, MEI has not adequately alleged how Cardinal Health breached the agreement.

       1.    *Conversion*

MEI's conversion claim fails to state a claim upon which relief can be granted.  Under Georgia law, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Decatur Auto Ctr. v. Wachovia Bank, N.A., 276 Ga. 817, 819, 583 S.E.2d 6 (2003).  To state a claim for conversion, a plaintiff must allege four elements: "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." Pierce v. Clayton Cty., Georgia, 717 F. App'x 866, 872 (11th Cir. 2017) (citing City of Atlanta v. Hotels.com, L.P., 332 Ga. App. 888, 775 S.E.2d 276, 279 (2015)).

Based on the allegations set forth in the First Amended Complaint, there is no dispute that MEI assigned its right, title, and interest in the Holdback amount to Cardinal Health and Live Oak.  That means that MEI has no title to the Holdback amount in question and that Cardinal Health has a right to assert ownership over the relevant portion of the Holdback amount.  MEI cannot show "an unauthorized assumption and exercise of the right of ownership over personal property belonging to [MEI], in hostility to [MEI's] rights . . . or an unauthorized appropriation."  DCA Architects v. Am. Building Consultants, 203 Ga. App. 598, 600, 417 S.E.2d 386 (1989) (internal marks and citation omitted).  Cardinal Health's act of dominion over the $85,000.00 was rightfully asserted, which renders MEI's conversion claim meritless.  See Kline v. Atlanta Gas Light Co., 246 Ga. App. 172, 173, 538 S.E.2d 93 (2000) ("[I]f a party has a right to assert ownership, the act of dominion is not wrongful and does not constitute conversion.").

Moreover, to the extent that MEI retained any rights in the Holdback amount, the economic loss rule limits MEI to seeking a remedy in contract, not in tort.  "The purpose of the economic loss rule is to distinguish between those actions cognizable in tort and those that may be brought only in contract. . . .  The economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."  City of Cairo

v. Hightower Consulting Engineers, 278 Ga. App. 721, 728, 629 S.E.2d 518 (2006) (internal marks and citation omitted).

To the extent that the parties had an agreement regarding how Cardinal Health was to apply the Holdback amount, after receiving it from CVS, any noncompliance with Cardinal Health with that agreement gives rise to a breach of contract claim, not a tort claim.  A close review of the First Amended Complaint reveals that this is what MEI alleges.  MEI alleges that the application of the Holdback amount was subject to an agreement between the parties.  (First Am. Compl. ¶¶ 13-16.)  MEI further avers that Cardinal Health did not apply the funds as agreed.  (Id. ¶¶ 28 & 42.)  Insofar as MEI alleges a contractual relationship governing the application of the Holdback amount and a purely economic loss from the alleged misapplication, the economic loss rule bars MEI's conversion claim.

The cases on which MEI relies to argue that the Court should permit the conversion claim to go forward, notwithstanding the contractual relationship between MEI and Cardinal Health, are distinguishable and therefore unpersuasive.  In Charter Mortgage Co. v. Ahouse, 165 Ga. App. 497, 497, 300 S.E.2d 328 (1983), the court upheld a jury verdict on conversion involving an escrow company that was not a party to the escrow agreement between the plaintiff and a third party.  In Atlantic Mechanical Contractors, Inc. v. Hurston,

185 Ga. App. 511, 364 S.E.2d 638 (1988), the court affirmed the entry of default judgment and an award of punitive damages flowing from a conversion claim against an employer that converted an employee's insurance premiums, finding that the employer's conduct constituted a "violation of its duty (imposed by law and not by the contract) not to convert appellant's funds to its own use and benefit." Id. at 512.  In the instant case, in contrast, it is apparent that MEI bases its conversion claim on Cardinal Health's alleged breach of an alleged agreement and not a violation of an independent duty.  As such, the conversion claim fails as a matter of law.

### 2.    *Breach of Contract (Application of Credit)*

The breach of contract claim that MEI alleges in Count Two fails to state a claim because Cardinal Health's internal communications did not give rise to a contract that MEI can enforce.  To state a claim for breach of contract, a plaintiff must allege facts establishing the following:

> parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.  Each of these essential terms must be certain.  In order that it may allege an agreement, a petition must set forth a contract of such certainty and completeness that either party may have a right of action upon it.

Laverson v. Macon Bibb County Hosp. Auth., 226 Ga. App. 761, 762, 487 S.E.2d 621 (1997) (internal citations and marks omitted).  An offer that "is unilateral and supported by no consideration . . . may be withdrawn at any time, without prior

notice, for any reason or, indeed, for no reason at all, and its withdrawal breaches no duty—for there is no duty to continue it—and violates no rights." Smith v. Federate Dept. Stores, Inc., 165 Ga. App. 459, 460, 301 S.E.2d 652 (1983).

In the First Amended Complaint, MEI alleges that an email between two Cardinal Health employees constitutes a "binding agreement wherein Cardinal agreed to apply the [$85,000] as a credit on MEI's account." (First Am. Compl. ¶ 47.) However, MEI does not allege that it provided any consideration to support the alleged contract upon which MEI bases the second count of the First Amended Complaint. (See generally First Am. Compl.) MEI also does not address this issue at all in response to Cardinal Health's Motion to Dismiss. Simply put, the internal instructions given by one Cardinal Health employee to another Cardinal Health employee did not give rise to a contract. The Court rejects MEI's conclusory assertion that the email containing these instructions constitutes an "agreement" that MEI can enforce, as the alleged contract lacks consideration.

3.    *Breach of Contract (Settlement Agreement)*

MEI next claims that Cardinal Health breached a settlement agreement reached by the parties. Whether this claim should be dismissed presents a closer question. However, after careful consideration, the Court agrees with Cardinal Health that it is due to be dismissed, too.

"Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract."  Jones v. Frickey, 274 Ga. App. 398, 401, 618 S.E.2d 29 (2005).  As indicated above, Georgia law provides the following in this regard:

> Under O.C.G.A. § 13–3–1, the plaintiff in a breach of contract action has the burden of pleading and proving three elements: subject matter of the contract, consideration, and mutual assent by all parties to all contract terms.

Broughton v. Johnson, 247 Ga. App. 819, 545 S.E.2d 370 (2001).  O.C.G.A. § 13–3–2 provides:

> The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition.

As explained by the court in TranSouth Financial Corp. v. Rooks, 269 Ga. App. 321, 324, 604 S.E.2d 562 (2004):

> One seeking to enforce a contract must bear the burden of proof as to all the essential elements of the contract, including the assent to the contractual terms. No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced.

(internal citations and punctuation omitted).

In this case, MEI contends that an email exchange between MEI and Cardinal Health constitutes a complete settlement agreement between the parties.

(See First Am. Compl., Ex. 6.)   On April 10, 2020, Cardinal Health initially proposed the following to resolve the parties' dispute:

> 1.      Cardinal Health agrees to return the $85,000 as a credit on the MEI account.
> 2.      In exchange for the $85k credit, MEI provides Cardinal Health with a full release of all claims, including the usury class action claims previously alleged by Mr. Bogachek.

(Id.)

In response to Cardinal Health's offer, MEI emphasized that it was important for MEI to receive the funds as soon as possible.  MEI stated that "[i]f Cardinal can comply with the following deadlines/details then the offer below is accepted."  The "deadlines/details included the following:

> (1)      Cardinal agrees to provide a settlement draft prior to Monday, April 20th at 5:00 P.M.;
> (2)      Cardinal agrees to credit the $85,000 to MEI Services (Account No. 673316) within 48 hours of email receipt of the executed Settlement Agreement.

(Id.)  MEI reiterated that if the timeline was acceptable to Cardinal Health, the parties would have an agreement.  (See id.)  Cardinal Health accepted this counteroffer, responding as following: "Cardinal Health agrees.  You'll be hearing from me on Monday."  (Id.)  Cardinal Health's response constituted an unequivocal acceptance.

The Court finds that MEI and Cardinal Health agreed on the essential terms.  While the parties still had to reduce the parties' email agreement to a final,

comprehensive settlement agreement, "[t]he parties need only agree to the essential terms of the contract, and the absence of agreement on nonessential terms does not render the agreement unenforceable." <u>Rushin v. Ussery</u>, 298 Ga. App. 830, 681 S.E.2d 263 (2009) (citing <u>Henry v. Blankenship</u>, 275 Ga. App. 658, 660–661(1)(a), 621 S.E.2d 601 (2005)).

MEI alleges that Cardinal Health "breached the agreement by failing to follow through as agreed." (First Am. Compl. ¶ 52.) This conclusory allegation, however, is contradicted by factual allegations in the First Amended Complaint and the attachments to the First Amended Complaint. Cardinal Health's first obligation, based on the parties' email agreement, was to provide a settlement draft. There is no dispute that Cardinal Health met that obligation. (First Am. Compl. ¶ 35, Ex. 7.) The Court understands that MEI took and continues to take issue with the proposed settlement draft,[2] but Cardinal Health's obligation was only to provide a settlement draft. Cardinal Health was not obligated to take any further action until after the parties executed the final settlement agreement, which never happened.

---

[2] It appears to the Court that MEI made a promise that it could not singularly execute – providing Cardinal Health with a full release of all claims, including the usury class action claims previously alleged by Mr. Bogachek. Thus, the inclusion of the additional parties may have been necessary to ensure Cardinal Health received the benefit of the bargain.

## III.    MOTION FOR SANCTIONS

### A.    Contentions of the Parties

Cardinal Health moves the Court pursuant to Federal Rule of Civil Procedure 11 to impose sanctions against MEI and its attorneys for the filing of the First Amended Complaint.  Cardinal Health asserts that sanctions under Rule 11 are warranted because MEI's claims against it are plainly frivolous.  Cardinal Health does not specify the nature of sanctions it requests be imposed against MEI.

MEI argues that Cardinal Health's Motion for Sanctions is an abuse of the court system.  MEI maintains that Cardinal Health could have waited for the Court's ruling on the Motion to Dismiss before filing the Motion for Sanctions. MEI suggests that Cardinal Health intentionally filed the Motion for Sanctions prematurely to influence the Court's ruling on the Motion to Dismiss.  MEI argues that the claims in the First Amended Complaint are not frivolous or improper and that Cardinal Health should be sanctioned itself for filing the Motion for Sanctions.

### B.    Standard of Review

Under Federal Rule of Civil Procedure 11, a court has discretion to award sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996). "The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998) (footnote omitted).

This Court may "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The signature requirement of Rule 11 operates as a certification "to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 542-43, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991). The purpose of Rule 11 sanctions is to deter "baseless" filings in federal court by requiring attorneys to certify that the claims they raise are not for improper purposes, are warranted by law, and have evidentiary support. See Fed. R. Civ. P. 11(b).

Rule 11(c)(2) contains a "safe harbor" provision, which provides in relevant part that "[t]he motion [for sanctions] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after

service . . . ."  A Rule 11 motion must be served and filed prior to final judgment or a judicial rejection of the offensive pleading.  Peer v. Lewis, 606 F.3d 1306, 1313 (11th Cir. 2010).

      C.    <u>Analysis</u>

In the case at bar, the Court finds that Rule 11 sanctions are not warranted. MEI's claims in the First Amended Complaint were weak, especially the claim for conversion and the breach of contract claim based on the internal communications of Cardinal Health's employees.  However, the claims were not so objectively frivolous so as to justify an award of sanctions.  Therefore, the Court **DENIES** the Motion for Sanctions.

The Court likewise will not award MEI's request for sanctions, as Cardinal Health's Motion for Sanctions had to be served and filed prior to the time that the Court issued a ruling on the Motion to Dismiss.  Further, the Motion for Sanctions was not substantively frivolous, given the weaknesses of the claims in the First Amended Complaint.

## IV.   **CONCLUSION**

Based on the foregoing, the Court **GRANTS** Defendant Cardinal Health 110, LLC's Motion to Dismiss MEI Services, Inc.'s First Amended Complaint (the "Motion to Dismiss") [Doc. No. 13] and **DENIES** Defendant Cardinal Health 110, LLC's Motion for Rule 11 Sanctions (the "Motion for Sanctions") [Doc. No. 17].

The Court **DIRECTS** the Clerk of Court to mark this case closed.

SO ORDERED this 5th day of April, 2021.


                                      *s/  CLARENCE COOPER*
                                      CLARENCE COOPER
                                      SENIOR UNITED STATES DISTRICT JUDGE